UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JOEL MARCEL CARTER,

                Plaintiff,                    Case No. 1:13-cv-37

v.                                      Honorable Janet T. Neff

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.

_____/

## <u>OPINION</u>

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 *et seq.* The Court has granted Plaintiff leave to proceed *in forma pauperis.* Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Defendants Michigan Department of Corrections, Vonhiltmeyer, Visconti and Scott on immunity grounds and/or for failure to state a claim. The Court will further dismiss all of Plaintiff's claims, except for Plaintiff's Eighth Amendment claims, against Defendants Mutschler, Raymond, Parson, Davis, Ayala, Gawn, Ike,

Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, ARF Deputy Warden McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer on immunity grounds and/or for failure to state a claim. The Court will serve Plaintiff's Eighth Amendment claim against those Defendants.

## Discussion

I.    Factual allegations

Plaintiff presently is incarcerated at the Ionia Maximum Correctional Facility (ICF) but complains of events that occurred at several facilities, including the ICF, the Marquette Branch Prison (MBP), the Gus Harrison Correctional Facility (ARF), the Macomb Correctional Facility (MRF) and the Michigan Reformatory (RMI). In his *pro se* complaint, he sues the Michigan Department of Corrections (MDOC), Mental Health Program Director Cathy Mutschler, Mental Health Program Western Regional Director Rick Raymond, Mental Health Program Eastern Regional Director Mary Parson, ICF Psychologist Unknown Davis, ICF Psychiatrist Unknown Ayala, ICF Mental Health Unit Chief Unknown Gawn, MBP Psychologist Unknown Ike, MBP Psychiatrist Unknown Henry, ARF Psychologist Unknown McRoberts, ARF Psychiatrist Unknown Dinsa, ARF Mental Health Unit Chief Unknown Pirlot, ARF Deputy Warden Unknown McRoberts, ARF Warden Unknown Klee, MRF Psychologist Unknown Nguyen, MRF Psychiatrist Unknown Pozios, MRF Mental Health Unit Chief Unknown Beauvau, MRF Classification Director Unknown Vonhiltmeyer, MRF Corrections Program Coordinator Unknown Visconti, MRF Administrative Assistant Unknown Scott, MRF Warden Unknown Romanowski, RMI Psychologists Unknown Fox

and Alicia Stephens, RMI Psychiatrist Unknown Myers,[1] RMI Mental Health Unit Chief Unknown Kissinger and RMI Warden Carmen Palmer.

Plaintiff suffers from multiple sclerosis and several mental disorders, including a "[m]ental [d]isorder [d]ue to [m]ultiple [s]clerosis, a [p]sychosis [d]isorder, (OCD) [] [an] [o]bsessive-[c]ompulsive [d]isorder and an [a]nti-[s]ocial [p]ersonality [d]isorder." (Compl., docket #1, Page ID##5, 6.) Since September 2005, Plaintiff states that he has exhibited symptoms of an "[o]bsessive-[c]ompulsive [d]isorder and/or [s]exual [i]mpulsivity [d]isorder." (*Id.*, Page ID#6.) Plaintiff's sexual deviant behavior manifests itself in "exhibitionism and includes excessive masturbation." (*Id.*) Plaintiff states that he has received over 200 sexual misconduct reports since September 2005. Because of his misconduct convictions, he complains of being in segregation and punitive detention. He has also received an increase in his security level to a level V facility "solely because of his behavior." (*Id.*) Plaintiff further alleges that he has been confined to his cell on loss of privileges (LOP) since 2005.[2] Plaintiff states that he suffers from muscle atrophy due to the deprivation of exercise and recreation, weight gain, an inability to concentrate, hypersomnia, hypertension, anxiety, panic attacks and thoughts of suicide. Plaintiff argues that each time he has lost privileges, he was not afforded an appropriate hearing in accordance with MDOC Policy Directive 03.03.105, ¶¶ DDD-JJJ.

---

[1]Plaintiff also refers to Defendant Myers as "Meyers." (Compl, docket #1, Page ID##14, 17.) For purposes of this Opinion, the Court will refer to this Defendant as Myers.

[2]According to MDOC Policy Directive 03.03.105, Attach. E (effective Apr. 9, 2012), the following privileges are taken away from a prisoner with a "loss of privileges" sanction: day room, activity room, study room, exercise facilities, group meetings, hobby craft activities, microwave, ice machine, general library, movies, musical instruments, radio, tape player, television, telephone, and use of kiosk, as well as other privileges.

While housed at SMF in 2007, Plaintiff alleges that the MDOC did not provide appropriate mental health treatment to Plaintiff.

In March 2010, while housed at ICF, Plaintiff claims that Psychologist Davis, Psychiatrist Ayala and Mental Health Unit Chief Gawn denied Plaintiff's request for treatment for his "OCD/Sexual Disorder" and programming for his mental and psychosis disorders. (Compl., Page ID#7.)

In May 2011, while housed at MBP, Plaintiff requested treatment from Psychologist Ike and Psychiatrist Henry for his disorders to no avail. Thereafter, Plaintiff attempted to commit suicide. At that point, Plaintiff claims that Defendants determined that housing Plaintiff for an extended period of time in segregation and in a maximum facility exacerbated his mental health symptoms. Defendants then reduced Plaintiff's security level from level V to level IV. He was also transferred to ARF to participate in a residential program for intensive mental health treatment but complains that he was still denied all of his privileges. Plaintiff notified ARF Psychologist McRoberts, Psychiatrist Dinsa and Mental Health Unit Chief Pirlot of his OCD and/or sexual impulsivity disorder but they did not offer any treatment.

Plaintiff then asked ARF Deputy Warden McRoberts if he could go outside with other prisoners. When Deputy Warden McRoberts asked Plaintiff why he could not go outside, Plaintiff stated that he had no privileges. Deputy Warden McRoberts offered to waive Plaintiff's sanctions if Plaintiff's psychologist agreed. Apparently Deputy Warden McRoberts met with Psychologist McRoberts but they still refused to give Plaintiff any privileges. Plaintiff also spoke with Mental Health Unit Chief Pirlot and Pirlot determined that Plaintiff's sanctions were justified by his behavior. Plaintiff therefore continued to be denied privileges. Plaintiff further alleges that

he has been denied exercise in violation of MDOC Policy Directive 03.03.105, ¶ QQQ (effective Apr. 9, 2012), which authorizes prisoners to participate in outdoor exercise for seven hours per month.

In November 2011, Plaintiff was transferred to MRF. At MRF, Plaintiff spoke with Warden Romanowski about his lack of privileges. Warden Romanowski directed Plaintiff to have Psychologist Nguyen contact Romanowski but Nguyen refused. Plaintiff then notified Psychologist Nguyen, Psychiatrist Pozios and Mental Health Unit Chief Beauvau that he suffered from OCD and a sexual impulsivity disorder. Plaintiff requested treatment. Nguyen, Pozios and Beauvau refused to give Plaintiff any treatment. Plaintiff also requested therapeutic treatment for his mental and psychosis disorders, but, again, he was denied treatment. Since November 3, 2011, Plaintiff claims that he has not received any form of therapeutic treatment or programming. Plaintiff argues that Nguyen, Pozios and Beauvau have confined him to his cell without regard to the impact on his mental illness.

Plaintiff also complains of being denied job assignments at MRF because of his disabilities. On December 6, 2011, Plaintiff was classified by Classification Director Vonhiltmeyer for a job assignment. Plaintiff states that an employment assignment must be completed before parole consideration. On February 18, 2012, Plaintiff was notified that he was first in line for a barber assignment. When Vonhiltmeyer learned of Plaintiff's "disability," however, he did not call him to work. (Compl., Page ID#10.) In front of Corrections Program Coordinator Visconti, Vonhiltmeyer stated that he would not issue Plaintiff an assignment "as long as [Plaintiff] continued to play with his dick." (Id.) Plaintiff filed a grievance. Visconti denied Plaintiff's grievance, finding that Plaintiff failed to meet the screening criteria for a job assignment because Plaintiff had

seven staff assault misconduct reports and a non-bondable misconduct report as well as "98 Exposure Tickets" and "over 100 Sexual Misconducts." (*Id.*, Page ID#11.) However, Plaintiff argues that he never received a "serious staff assault" misconduct report, which would prohibit him from being employed as a barber under MDOC policy, because it was reduced to the lesser-included offense of insolence. (*Id.*) Plaintiff appealed the denial of his grievance but Defendants Scott and Romanowski denied the grievance appeals. Plaintiff also provides that other prisoners are permitted to occupy barber assignments even though they had serious staff assault misconduct reports. He claims that those other prisoners are not screened for employment assignments.

In May 2012, Plaintiff was transferred to RMI. On May 19, 2012, Plaintiff received a substance abuse misconduct ticket, and, thus, was placed in temporary segregation. On June 7, 2012, Defendant Stephens found Plaintiff guilty of the misconduct ticket and sentenced him to thirty days of punitive detention. Plaintiff notified Defendants Fox, Myers and Kissinger that he should not be in detention because he suffers from a mental illness and had recently completed a residential treatment program to no avail. Plaintiff also requested medical treatment from Defendants Fox, Myers and Kissinger for his OCD and sexual impulsivity disorder and treatment programs for his mental and psychosis disorders but was denied. Plaintiff then spoke with Warden Palmer about a waiver for his sanctions. Warden Palmer apparently refused to provide Plaintiff with a waiver or to allow him to participate in daily recreation activities.

In his complaint, Plaintiff raises the following four arguments. First, Plaintiff argues that Defendants Mutschler, Raymond, Parson, Davis, Ayala, Gawn, Ike, Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, ARF Deputy Warden McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer violated his Eighth Amendment rights

by: (1) failing to provide him treatment for his OCD and sexual impulsivity disorder; (2) depriving him of therapeutic treatment for his mental and psychosis disorders; and (3) depriving him of daily exercise and/or meaningful recreation necessary for his multiple sclerosis and mental disabilities. Plaintiff claims that he needs psychiatric intervention and psychotropic medication.

Second, Plaintiff argues that Defendants Mutschler, Raymond, Parson, Davis, Ayala, Gawn, Ike, Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers and Kissinger denied Plaintiff's due process rights by failing to determine his mental health status before subjecting him to the MDOC's disciplinary process in accordance with MDOC Policy Directive 03.03.105, ¶¶ DDD-JJJ. Plaintiff claims that Defendants' failure to provide treatment for Plaintiff's mental disabilities has resulted in an atypical and significant hardship, i.e., placing him in a maximum facility, placing him in segregation for 2,035 days, the loss of privileges for 8,030 days, and denying him prison programming and parole.

Third, Plaintiff complains that Defendants MDOC, Mutschler, Raymond, Parson, Davis, Ayala, Gawn, Ike, Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, ARF Deputy Warden McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer wrongly denied Plaintiff of mental health services, rehabilitation programs, and activities under the ADA and the Fourteenth Amendment for his "OCD/[s]exual [i]mpulsivity [d]isorder." (Compl., Page ID#21.) He also argues that Defendants violated the Fourteenth Amendment "due to [unequal] treatment [] received by non-disabled [persons] and disabled person[s] with fewer or less serious disabilities [and] with no rational basis underlying the disparate treatment." (*Id.*, Page ID#22.)

Fourth, Plaintiff complains that Defendants MDOC, Vonhiltmeyer, Visconti, Scott and Romanowski wrongly denied him employment in the barber shop in violation of the ADA and the Fourteenth Amendment. Plaintiff argues that Defendants intentionally treated Plaintiff differently from other similarly situated prisoners by screening him for security assignments for the sole purpose of denying him the assignment. Plaintiff states that Defendants' treatment was motivated by their intention to discriminate against him on the basis of his disability and to inhibit him from completing his parole requirements.

Plaintiff requests compensatory and punitive damages, declaratory relief, injunctive relief and a permanent injunction.

II.     Immunity

A.     **Sovereign Immunity**

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000

-8-

WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses Plaintiff's § 1983 claims against Defendant MDOC.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).  The Supreme Court has held that Title II of the ADA applies to state prisons and inmates.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs).  The proper defendant under a Title II claim is the public entity or an official acting in his official capacity.  *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002).  Plaintiff has named the MDOC.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA.  The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 157, 159 (2006).  If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity.  *Id.*  The Court will address Plaintiff's ADA claims in Section III(A), *infra*.

### B.  Judicial Immunity

Plaintiff alleges that Defendant Stephens "made an arbitrary decision" and found him guilty of a substance abuse misconduct ticket in 2012.  Generally, a judge is absolutely immune from

a suit for monetary damages.  *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.") (internal quotations omitted).  Defendant Stephens is a hearing officer whose duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255.  Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections.  *See* MICH. COMP. LAWS § 791.251(e)(6).  Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed.  *See* MICH. COMP. LAWS § 791.252(k).  There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts.  *See* MICH. COMP. LAWS § 791.255(2).  Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers.  *Id.*; *see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).  Because Defendant Stephens is entitled to judicial immunity, Plaintiff's claim against her will be dismissed.

## III.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    **ADA**

Plaintiff complains that MRF Defendants Vonhiltmeyer, Visconti, Scott and Romanowski wrongly denied him employment in the barber shop in violation of Title II of the ADA. Plaintiff also alleges that Defendants MDOC, Mutschler, Raymond, Parson, Davis, Ayala, Gawn, Ike, Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, ARF Deputy Warden McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer wrongly denied him mental health services, rehabilitation programs, and activities under Title II of the ADA.[3]

Title II of the ADA provides: "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, Petitioner must show that he is a "qualified person," that he has a "disability," and that prison employment, mental health services, rehabilitation programs and activities, are a "service, program, or activity" of the state. Under the ADA, the term "disability" is defined as: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Plaintiff lists his disability as a "OCD/Sexual Impulsivity Disorder." (Compl., docket #1, Page ID#21.) Plaintiff states that he has received over 200 sexual misconduct tickets because of his disorder. As the Sixth Circuit has recognized in an unpublished opinion, "[P]laintiff's

---

[3]Plaintiff sues numerous officials in both their individual and official capacities. Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Moreover, because Plaintiff names the MDOC itself, his official-capacity claims against the remaining Defendants are merely cumulative. Therefore, the Court will dismiss Plaintiff's ADA claims against all Defendants who are sued in their individual and official capacities.

alleged propensity for sexual misbehavior does not constitute a 'disability' within the meaning of the ADA. The ADA expressly states that 'disability' as defined within 42 U.S.C. § 12102(2) does not include 'sexual behavior disorders.'" *Hawkins v. Mich. Parole Bd.*, No. 98-1045, 1999 WL 506996, at *1 (6th Cir. June 10, 1999) (citing 42 U.S.C. 12211(b)(1)). In nearly identical language to the ADA, the Rehabilitation Act (RA) expressly excludes from the protected class of persons those who suffer from "sexual behavior disorders." 29 U.S.C. 705(20)(F); *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000) (holding that prisoner seeking participation in sexual offender treatment program is not protected by the RA due to statutory exclusion). Accordingly, Plaintiff fails to state an ADA claim for being denied prison employment, mental health services, rehabilitation programs and activities because of his "OCD/Sexual Impulsivity Disorder." (Compl., Page ID#21.)

Even assuming Plaintiff could make the required showing for the ADA, his claim that the disorder will inhibit his future parole eligibility also fails to state a claim. The ADA does not categorically bar a state parole board from considering an inmate's disability in making an individualized assessment of the future dangerousness of the inmate. *See Thompson v. Davis*, 295 F.3d 890, 898 n.4 (9th Cir. 2002). Even if Plaintiff's "OCD/Sexual Impulsivity Disorder" qualified as a disability, Plaintiff received over 200 sexual misconduct convictions. (Compl., Page ID#21.) Without question, the parole board has a legitimate penological interest in considering a prisoner's sexual offender history during an individualized inquiry for parole suitability. *Id.*

In short, Plaintiff fails to state an ADA claim.

B.      **Fourteenth Amendment (procedural due process)**

Plaintiff asserts four procedural due process claims in his complaint. Plaintiff first argues that he was wrongfully denied employment in the barber shop by Defendants Vonhiltmeyer, Visconti, Scott and Romanowski. Plaintiff also claims that Defendants Mutschler, Raymond, Parson, Davis, Ayala, Gawn, Ike, Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, ARF Deputy Warden McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer wrongly denied him mental health rehabilitation programs. Further, Plaintiff asserts that he suffered an atypical and significant hardship from the sentences of over 200 sexual misconduct convictions. Reading Plaintiff's complaint liberally, he finally alleges that Defendants Visconti, Scott and Romanowski wrongly denied a grievance. *See Haines*, 404 U.S. at 520.

The Fourteenth Amendment protects an individual from the deprivation of life, liberty or property, without the due process of law. *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

1.    Prison Employment

The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d

950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the denial of employment in the barber shop by Defendants Vonhiltmeyer, Visconti, Scott and Romanowski.

2.     Rehabilitation Programs

Plaintiff argues that he was wrongly denied mental health rehabilitation programs for his "OCD/Sexual Impulsivity Disorder." (Compl., docket #1, Page ID#21.) Contrary to his assertions, Plaintiff does not have a federally cognizable liberty interest in participating in rehabilitative programs. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Because Plaintiff has no liberty interest in rehabilitative programs, he fails to state a due process claim against Defendants Mutschler,

-15-

Raymond, Parson, Davis, Ayala, Gawn, Ike, Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, ARF Deputy Warden McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer.

3.      Misconduct Convictions

Because of over 200 sexual misconduct convictions, Plaintiff claims that he has been disciplined with placement in a level V facility, 2,035 days in segregation, 8,030 days of loss of privileges, and has been denied prison programming and parole.

To the extent Plaintiff challenges his sexual misconduct convictions, his right to due process depends on whether the convictions implicated any liberty interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  In *Wolff*, the Supreme Court held that prison disciplinary proceedings implicating a liberty interest must provide the following minimum process:  (i) at least 24 hours of advance notice of the charges, (ii) the right to call witnesses and to present evidence in the inmate's defense, (iii) an impartial tribunal, and (iv) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action.  *Wolff*, 418 U.S. at 563-69.

If the prisoner received the procedural protections set forth in *Wolff*, and if there was "some evidence" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Walpole v. Hill*, 472 U.S. 445, 457 (1985).  Plaintiff states that he was not afforded "an appropriate hearing" in accordance with the provisions for a prisoner with a mental disability of MDOC Policy Directive 03.03.105, ¶¶ DDD-JJJ.  (Compl., docket #1, Page ID#7.)  In his complaint, Plaintiff does not argue that he never received notice, the opportunity to call witnesses, or a written statement of the results of his misconduct hearings.  Rather, Plaintiff argues

that he should have received special treatment for having a mental disability under MDOC policy. The due process requirements in *Wolff* do not require such treatment. *See Wolff*, 418 U.S. at 563-69. Moreover, even if Defendants' actions violated prison policy, § 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). In addition, an alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992).

Moreover, the *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[4] for prisoners convicted of crimes occurring after

---

[4] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

  Even in the absence of a protectible interest implicated by the misconduct convictions themselves, a prisoner may be able to raise a due-process challenge to prison conditions that constitute a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Generally, placement in segregation is not such a condition. *Id.* at 484; *see also Wilkinson*, 545 U.S. at 222-23. Courts will, however, consider the duration and nature of an extended stay in segregation to determine whether it imposes atypical and significant hardship. *Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation for an extended period does not present atypical and significant hardship. *See, e.g., Jones v. Baker*, 155 F.3d 810, 812-23 (6th Cir.1998) (two years of segregation while inmate was investigated for murder of prison guard in riot); *Mackey v. Dyke*, 111 F.3d 460, 461 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession

-18-

of illegal contraband and assault and where reclassification was delayed due to prison crowding). The length of Plaintiff's stay in segregation does not rise to the level of the aforementioned cases. Plaintiff argues that he has been in segregation for 2,035 days for over 200 misconduct convictions, which amounts to approximately eleven days per misconduct conviction. Eleven days of segregation per misconduct ticket does not amount to a significant and atypical deprivation.

Further, Plaintiff's allegations regarding the *nature* of his segregation do not present an atypical and significant hardship. Those allegations include the denial of a prison job, *see Newsom*, 888 F.2d at 374 (no constitutional right to a prison job), the lack of access to prison rehabilitative programs, *see Antonelli*, 81 F.3d at 1431 (no constitutional right to participate in a rehabilitative program), and the loss of privileges, *see Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (finding that loss of privileges and placement in segregation does not rise to a protected liberty interest).

Plaintiff also argues that his placement in a level V facility implicates the Due Process Clause. In *Sandin*, 515 U.S. at 484, the Supreme Court held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody*, 429 U.S. at 88 n.9; *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file

-19-

failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because Plaintiff did not have a constitutional right to a particular security level or place of confinement). Accordingly, Plaintiff's claims regarding his misconduct convictions fail to state a due process claim.

### 4. Grievance Process

Reading Plaintiff's complaint liberally, *see Haines*, 404 U.S. at 520, he appears to argue that Defendants Visconti, Scott and Romanowski wrongly denied his grievance. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants Visconti, Scott and Romanowski did not deprive him of due process by denying any of his grievances.

In summary, Plaintiff's allegations fail to state a due process claim.

### C. **Fourteenth Amendment (equal protection)**

Plaintiff contends that Defendants Mutschler, Raymond, Parson, Davis, Ayala, Gawn, Ike, Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, ARF Deputy Warden McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer wrongly denied him mental health rehabilitation programs in violation of the Equal Protection Clause. Plaintiff also complains that Defendants Vonhiltmeyer, Visconti, Scott and Romanowski wrongly denied him employment in violation of his equal protection rights under the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Clause "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Where neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). In addition, a plaintiff who does not allege discrimination based on membership in an identifiable class or group may state a "class-of-one" claim by alleging that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).

1.    Programs

Plaintiff contends that Defendants denied him mental health programs, rehabilitation programs and activities while allowing similarly-situated prisoners to participate in those programs. Plaintiff's allegations do not implicate a fundamental right because Plaintiff does not have a constitutional right to programs and activities. *See Moody*, 429 U.S. at 88 n.9. Moreover, Plaintiff does not allege that Defendants discriminated against him as a member of an identifiable group or class. Rather, Plaintiff argues that Defendants violated the Fourteenth Amendment "due to [unequal] treatment [] received by non-disabled [persons] and disabled person[s] with fewer or less serious disabilities [and] with no rational basis underlying the disparate treatment." (Compl., Page ID#22.) Plaintiff fails to allege any facts from which to infer that Defendants intentionally treated similarly-situated prisoners more favorably, or that Defendants purposefully discriminated against him with regard to provisions for mental health programs, rehabilitation programs and activities. *See Vill. of Willowbrook*, 528 U.S. at 564. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff, therefore, fails to state an equal protection claim.

## 2.  Employment

Plaintiff claims that Defendants Vonhiltmeyer, Visconti, Scott and Romanowski screened him for employment at the barber shop and determined that Plaintiff could not work in the barber shop because of certain assaultive misconducts. However, Plaintiff claims that other prisoners with assaultive misconducts were not screened for employment. Plaintiff does not allege that Defendants' decision implicated a fundamental right nor could he, as Plaintiff does not have a constitutional right to a particular prison job, or any job. *See Newsom*, 888 F.2d at 374. Moreover, Plaintiff does not allege that Defendants discriminated against him as a member of an identifiable group or class; he merely contends that Defendants treated him differently from other similarly

situated prisoners. Thus, Plaintiff arguably alleges a class-of-one claim, to which rational-basis review typically applies. *See Davis v. Prison Health Serv. et al.*, 679 F.3d 433, 440-41 (6th Cir. 2012). The Supreme Court recognizes, however, that certain kinds of state action are not amenable to rational-basis review, particularly employment decisions and other forms of discretionary decisionmaking:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008). Deciding whether a prisoner should be permitted to work in a particular prison job is precisely the sort of discretionary decision contemplated by the Court in *Engquist. See id.* at 604 ("This principle [barring rational-basis scrutiny] applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify."). There are a multitude of legitimate reasons why prison officials might conclude that assigning a particular prisoner to work in a particular position or in a particular area of the prison could create unnecessary risks or challenges,[5] and court scrutiny of such decisions via rational-basis

---

[5]For example, MDOC Policy Directive 05.01.100 ("Prisoner Program Classification") (effective May 30, 2011) provides:

> [I]nstitutional needs and resources, custody and security concerns, any special needs of the prisoner, the prisoner's eligibility for reduced custody, discharge, and parole and, to the extent possible, the prisoner's preference also shall be considered when making program classification decisions. The prisoner's history of *assaultive or predatory behavior* shall be considered before assigning a prisoner to a sensitive or isolated assignment or to an assignment supervised by only one staff person.

*Id.* ¶ E (emphasis added). Thus, the MDOC recognizes that a prisoner's history of assaultive misconducts is relevant for work assignments.

review would unduly hinder prison management.  In light of *Enquist*, therefore, Plaintiff does not state an equal-protection claim against Defendants Vonhiltmeyer, Visconti, Scott and Romanowski.

Reading Plaintiff's complaint liberally, he also alleges that Defendants discriminated against him by denying him employment because of his disability, i.e. OCD/sexual impulsivity disorder.  Even if Plaintiff's alleged OCD/sexual impulsivity disorder qualifies as a disability, disabled persons are not a suspect or a quasi-suspect class for purposes of an equal protection challenge.  *See Tennessee v. Lane*, 541 U.S. 509, 522 (2004) (explaining that "classifications based on disability violate [the Equal Protection Clause] if they lack a rational relationship to a legitimate governmental purpose"); *see also Ciavone v. McKee,* No. 1:08-cv-771, 2009 WL 2959737, at *11 (W.D. Mich. Sept. 10, 2009) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 445–46 (1985) (holding that the mentally retarded do not constitute a suspect class and stating in dicta that the mentally ill are not a suspect class); *Smith v. Fischer*, No. 9:07–cv1264, 2009 WL 632890 at *10 n.29 (N.D.N.Y. Mar. 9, 2009) ("sex offenders, the mentally ill, the mentally handicapped, and the indigent do not comprise a suspect class for Equal Protection purposes") (listing cases); *Torres–Caraballo v. Municipality of Yauco*, No. 07–1891, 2008 WL 2906759 (D.P.R. July 23, 2008) ( "The mentally ill ... are not a suspect or quasi-suspect class under the equal protection clause.") A state may therefore treat disabled persons differently, so long as its actions are rationally related to some legitimate governmental purpose.  *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-68 (2001).  Because prisoners who suffer from sexual disorders may be disruptive to the order and safety of the prison, the decision to deny employment to those prisoners is rationally related to a legitimate governmental purpose.  Accordingly, Plaintiff fails to state an equal-protection claim with regards to his alleged sexual disability.

D.    **Eighth Amendment**

With respect to Plaintiff's Eighth Amendment claim against Defendants Mutschler, Raymond, Parson, Davis, Ayala, Gawn, Ike, Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, ARF Deputy Warden McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer, the Court concludes that Plaintiff's allegations are sufficient to warrant service of the complaint on them.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendants MDOC, Vonhiltmeyer, Visconti and Scott will be dismissed on immunity grounds and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will further dismiss all claims, except for Plaintiff's Eighth Amendment claims, against Defendants Mutschler, Raymond, Parson, Davis, Ayala, Gawn, Ike, Henry, ARF Psychologist McRoberts, Dinsa, Pirlot, ARF Deputy Warden McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer on immunity grounds and/or for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve Plaintiff's Eighth Amendment claim against those Defendants.

An Order consistent with this Opinion will be entered.


Dated: __June 27, 2013_____        __/s/ Janet T. Neff_____
                                        Janet T. Neff
                                        United States District Judge