UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOEL CARTER,

          Plaintiff,                                 Hon. Janet T. Neff

v.                                                Case No. 1:13 CV 37

MICHIGAN DEPARTMENT
OF CORRECTIONS, et al.,

          Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the Court on <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #35); <u>Defendant Gawne's Motion for Summary Judgment</u>, (Dkt. #43); <u>Defendant Dinsa's Motion for Summary Judgment</u>, (Dkt. #50); <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #61); <u>Defendant Pirlot's Motion for Summary Judgment</u>, (Dkt. #63); <u>Defendant Carrie McRoberts' Motion for Summary Judgment</u>, (Dkt. #82); and <u>Plaintiff's Motions for Summary Judgment</u>, (Dkt. #77 and 97).

Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #35), be **granted**; <u>Defendant Gawne's Motion for Summary Judgment</u>, (Dkt. #43), be **granted**; <u>Defendant Dinsa's Motion for Summary Judgment</u>, (Dkt. #50), be **granted in part and denied in part**; <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #61), be **granted**; <u>Defendant Pirlot's Motion for Summary Judgment</u>, (Dkt. #63), be **granted in part and denied in part**; <u>Defendant Carrie McRoberts' Motion for Summary Judgment</u>, (Dkt. #82), be **granted in part and denied in part**; and <u>Plaintiff's Motions for Summary Judgment</u>, (Dkt. #77 and 97), both be **denied**, as detailed herein.

## **BACKGROUND**

Plaintiff is presently incarcerated at the Bellamy Creek Correctional Facility (IBC), but his complaint concerns matters which allegedly occurred at several facilities, including the Ionia Correctional Facility (ICF), the Marquette Branch Prison (MBP), the Gus Harrison Correctional Facility (ARF), the Macomb Correctional Facility (MRF) and the Michigan Reformatory (RMI). Plaintiff initiated this action against the Michigan Department of Corrections (MDOC), Mental Health Program Director Cathy Mutschler, Mental Health Program Western Regional Director Rick Raymond, Mental Health Program Eastern Regional Director Mary Parson, ICF Psychologist Unknown Davis, ICF Psychiatrist Unknown Ayala, ICF Mental Health Unit Chief Unknown Gawne, MBP Psychologist Unknown Eyke, MBP Psychiatrist Unknown Henry, ARF Psychologist Carrie McRoberts, ARF Psychiatrist Unknown Dinsa, ARF Mental Health Unit Chief Unknown Pirlot, ARF Deputy Warden Lee McRoberts, ARF Warden Unknown Klee, MRF Psychologist Unknown Nguyen, MRF Psychiatrist Unknown Pozios, MRF Mental Health Unit Chief Unknown Beauvau, MRF Classification Director Unknown Vonhiltmeyer, MRF Corrections Program Coordinator Unknown Visconti, MRF Administrative Assistant Unknown Scott, MRF Warden Unknown Romanowski, RMI Psychologists Unknown Fox and Alicia Stephens, RMI Psychiatrist Unknown Myers, RMI Mental Health Unit Chief Unknown Kissinger and RMI Warden Carmen Palmer.

In his complaint, Plaintiff alleges the following. Plaintiff suffers from multiple sclerosis and several mental disorders, including an "[o]bsessive-[c]ompulsive [d]isorder and/or [s]exual [i]mpulsivity [d]isorder." Plaintiff's sexually deviant behavior manifests itself in "exhibitionism and includes excessive masturbation." Plaintiff has received over 200 sexual misconduct reports since September 2005. Because of his numerous misconduct convictions, Plaintiff has been confined to his

cell on loss of privileges (LOP) status for several years. As a result, Plaintiff suffers from muscle atrophy, weight gain, an inability to concentrate, hypersomnia, hypertension, anxiety, panic attacks and thoughts of suicide. Each time Plaintiff has been deprived of certain privileges, he has not been afforded an appropriate hearing in accordance with MDOC Policy.

While housed at SMF in 2007, Plaintiff did not receive appropriate mental health treatment. In March 2010, while housed at ICF, Plaintiff requested that Defendants Davis, Ayala and Gawne provide appropriate treatment for his "OCD/Sexual Disorder" as well as additional programming for his mental and psychosis disorders. Plaintiff's request was denied.

In May 2011, while housed at MBP, Plaintiff unsuccessfully requested treatment from Defendants Eyke and Henry for his various disorders. Thereafter, Plaintiff attempted to commit suicide. Defendants subsequently determined that housing Plaintiff in a maximum security facility, as well as confining him to segregation for extended periods of time, exacerbated his mental health symptoms. Defendants subsequently reduced Plaintiff's security level and transferred him to ARF so that he could participate in a residential mental health treatment program. Plaintiff was nevertheless denied all privileges. Plaintiff notified Defendants Carrie McRoberts, Dinsa, and Pirlot of his OCD and/or sexual impulsivity disorder, but they did not offer any treatment for such.

Plaintiff later informed Defendant Lee McRoberts that he was not permitted to go outside because his privileges had been revoked. McRoberts offered to waive Plaintiff's sanctions and allow him to go outside if Plaintiff's psychologist agreed. Defendant Lee McRoberts met with Defendant Carrie McRoberts who refused to waive Plaintiff's sanctions. Defendant Pirlot likewise concluded that Plaintiff's sanctions were justified in light of his behavior.

In November 2011, Plaintiff was transferred to MRF after which he spoke with Defendant Romanowski regarding his loss of privileges. Romanowski sought to speak with Defendant Nguyen about the matter, but Nguyen refused. Plaintiff informed Defendants Nguyen, Pozios, and Beauvau that he suffered from OCD and a sexual impulsivity disorder. Plaintiff requested treatment, but Defendants denied such and instead simply confined Plaintiff to his cell.

Plaintiff was also denied job assignments at MRF because of his mental illness. On February 18, 2012, Plaintiff was notified that he was scheduled to obtain an assignment as a barber. When Defendant Vonhiltmeyer learned of Plaintiff's disability, however, he refused to allow Plaintiff to receive the assignment, instead stating that he would not issue Plaintiff an assignment "as long as [Plaintiff] continued to play with his dick."

Plaintiff filed a grievance about this matter which was denied on the ground that Plaintiff failed to meet the screening criteria for a job assignment given his numerous tickets for staff assault, "exposure," and sexual misconduct. Plaintiff appealed the denial of his grievance, but Defendants Scott and Romanowski denied his appeals. Plaintiff asserts that other prisoners are not screened for employment assignments and, moreover, that other prisoners are permitted to hold barber assignments even though they have received tickets for staff assault.

In May 2012, Plaintiff was transferred to RMI. On May 19, 2012, Plaintiff was issued a substance abuse misconduct ticket after which he was placed in temporary segregation. On June 7, 2012, Defendant Stephens found Plaintiff guilty of the misconduct ticket and sentenced him to thirty days of punitive detention. Plaintiff alleges that he should not have been placed in detention because he suffers from a mental illness and had recently completed a residential treatment program. Plaintiff requested treatment from Defendants Fox, Myers and Kissinger for his OCD and sexual impulsivity

disorder, as well as his various other impairments, but his request was denied. Plaintiff later spoke with Defendant Palmer about obtaining a waiver for his various behavior-based sanctions. Palmer refused to provide Plaintiff with a waiver or to allow him to participate in daily recreation activities.

In his complaint, Plaintiff asserts four general claims. First, Plaintiff argues that Defendants Mutschler, Raymond, Parson, Davis, Ayala, Gawne, Eyke, Henry, Carrie McRoberts, Dinsa, Pirlot, Lee McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer violated his Eighth Amendment rights by: (1) failing to provide him treatment for his OCD and sexual impulsivity disorder; (2) depriving him of therapeutic treatment for his mental and psychosis disorders; and (3) depriving him of daily exercise and/or meaningful recreation necessary for his multiple sclerosis and mental disabilities.

Second, Plaintiff argues that Defendants Mutschler, Raymond, Parson, Davis, Ayala, Gawne, Eyke, Henry, Carrie McRoberts, Dinsa, Pirlot, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers and Kissinger denied Plaintiff's due process rights by failing to determine his mental health status before subjecting him to the MDOC's disciplinary process. Plaintiff claims that Defendants' failure to provide treatment for his mental disabilities has resulted in atypical and significant hardship.

Third, Plaintiff complains that Defendants MDOC, Mutschler, Raymond, Parson, Davis, Ayala, Gawne, Eyke, Henry, Carrie McRoberts, Dinsa, Pirlot, Lee McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger and Palmer wrongly deprived Plaintiff of mental health services, rehabilitation programs, and activities under the ADA and the Fourteenth Amendment. Plaintiff also alleges that Defendants violated the Fourteenth Amendment "due to

[unequal] treatment [] received by non-disabled [persons] and disabled person[s] with fewer or less serious disabilities [and] with no rational basis underlying the disparate treatment."

Fourth, Plaintiff complains that Defendants MDOC, Vonhiltmeyer, Visconti, Scott and Romanowski wrongly denied him employment in the barber shop in violation of the ADA and the Fourteenth Amendment. Plaintiff alleges that Defendants intentionally treated Plaintiff differently from other similarly situated prisoners by screening him for security assignments for the sole purpose of denying him the assignment. Plaintiff states that Defendants' actions were motivated by an intent to discriminate against Plaintiff on the basis of his disability and to prevent him from successfully completing his parole requirements. Plaintiff requests compensatory and punitive damages, declaratory relief, injunctive relief and a permanent injunction.

On June 27, 2013, the Honorable Janet T. Neff dismissed Plaintiff's claims save his Eighth Amendment claims for failure to receive appropriate mental health treatment asserted against the following Defendants: Mutschler, Raymond, Parson, Davis, Ayala, Gawnee, Eyke, Henry, Carrie McRoberts, Dinsa, Pirlot, Lee McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger, and Palmer. All remaining Defendants, except for Defendant Davis,[1] now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies.

---

[1] Plaintiff has yet to effect service on Defendant Davis. As discussed herein, the undersigned recommends that Plaintiff's claims against Defendant Davis be dismissed for failure to timely effect service.

# SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 788 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established

appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed

in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

In support of their respective positions, the parties have submitted copies of various grievances that Plaintiff has filed during the relevant time period, as well as additional relevant evidence. An examination of this evidence reveals that the vast majority of Plaintiff's remaining claims must be dismissed for failure to properly exhaust administrative remedies.

I.        RMI-12-10-1768-12b

Plaintiff initiated this grievance on October 14, 2012, against Defendants Myers, Fox, and Kissinger. (Dkt. #1, Exhibit A at ID#29; Dkt. #62, Exhibit D; Dkt. #77, Exhibit F). Plaintiff alleged in this grievance that Defendants violated his Eighth Amendment rights by failing to provide him with proper treatment for his emotional impairments and depriving him of daily exercise opportunities. Defendants concede that Plaintiff pursued this grievance through all three steps of the grievance process, but argue that because Plaintiff initiated the present action before properly completing the prison grievance process, this grievance cannot serve to exhaust any of the claims asserted in Plaintiff's complaint. The Court agrees.

As Defendants correctly observe, where an inmate files a civil action in the federal courts before completing the available administrative processes, his complaint (or certain claims therein) must be dismissed for failure to properly exhaust administrative remedies. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Larkins v. Wilkinson*, 1998 WL 898870 at *2 (6th Cir., Dec. 17, 1998) (inmate's "attempt to exhaust his available administrative

remedies only after filing suit in federal court ignores the clear mandate of § 1997e(a)"); *McKaye v. Burnett*, 104 Fed. Appx. 515, 516 (6th Cir., July 13, 2004) (same). As discussed below, because Plaintiff initiated the present action before allowing the prison grievance process to be completed, this particular grievance cannot serve to exhaust any of Plaintiff's remaining claims.

According to MDOC policy, "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II." Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ S (effective July 9, 2007). MDOC policy further provides that if prison officials fail to timely respond to a grievance, the inmate may proceed to the next step in the grievance process. *See* Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ T.

In circumstances in which a prisoner initiates legal action prior to receiving a response to his Step III grievance, but after the expiration of the aforementioned 120 day period, the Court has determined that such constituted proper exhaustion of available administrative remedies. As the Court has observed, to conclude otherwise would permit MDOC officials to easily obtain the dismissal of *every* lawsuit filed by a prisoner who properly complies with the MDOC's grievance policies. MDOC officials would need only ignore every Step III grievance until after the expiration of the 120 day period and simply wait until the prisoner files a lawsuit. Once the prisoner files a lawsuit, MDOC officials could then issue a response to the Step III grievance and claim that the lawsuit must be dismissed because it was filed before the inmate completed the administrative process. The present circumstance, however, is easily distinguishable.

Plaintiff initiated this grievance on October 14, 2012. Thus, for present purposes, the administrative grievance process was not properly completed until the sooner of the following: (1)

Plaintiff receiving a response to his Step III grievance, or (2) the expiration, on February 9, 2013, of the 120-day period. When Plaintiff initiated the present lawsuit on January 11, 2013, however, he had neither received a response to his Step III grievance nor had the 120-day period expired. Simply stated, when Plaintiff initiated the present action, the MDOC grievance process had not been completed.

Moreover, the fact that prison officials did not provide a response to Plaintiff's Step III grievance until after the expiration of the 120-day period is irrelevant. As the Sixth Circuit has made clear, whether the grievance process is properly completed after the initiation of legal action is irrelevant. Instead, the relevant question is whether the grievance process has been properly completed at the moment legal action is initiated. Accordingly, this particular grievance cannot serve to exhaust any of Plaintiff's remaining claims.

II.          ARF-11-09-3431-17z

Plaintiff initiated this grievance on September 14, 2011, against Defendants Pirlot and Klee. (Dkt. #1, Exhibit A at ID#35; Dkt. #78, Exhibit J). Plaintiff alleged that Defendants violated his rights under the Americans with Disabilities Act (ADA) by failing to provide adequate therapeutic treatment. As discussed above, however, Plaintiff's ADA claims have all been dismissed. Accordingly, this grievance fails to properly exhaust any of Plaintiff's remaining claims.

III.         MRF-12-03-0494-12b

Plaintiff initiated this grievance on March 21, 2012, alleging violations of his right to receive adequate psychological treatment. (Dkt. #1, Exhibit A at ID#41; Dkt. #77, Exhibit E). Because this grievance is not asserted against any particular individual, however, it fails to properly exhaust any

of Plaintiff's remaining claims. Plaintiff has demonstrated that he understands the requirement to identify in his grievances the individuals against whom a grievance is asserted. Moreover, Plaintiff has submitted no evidence that he attempted, but was unable, to learn the identity of the individual(s) in question. Furthermore, Defendants have submitted evidence that Plaintiff failed to pursue this grievance through all three steps of the grievance process. (Dkt. #36, Exhibit B). Plaintiff has presented no evidence to the contrary. Accordingly, this grievance fails to properly exhaust any of Plaintiff's remaining claims.

IV.        MRF-12-02-0281-02e

        Plaintiff initiated this grievance on February 12, 2012, alleging that his rights under the ADA and Equal Protection Clause were violated when he was not given a prison job as a barber. (Dkt. #1, Exhibit A at ID#45). As discussed above, Plaintiff's ADA and equal protection claims have all been dismissed. Accordingly, this grievance fails to properly exhaust any of Plaintiff's remaining claims.

V.        RMI-12-06-0896-05b

        Plaintiff initiated this grievance on June 15, 2012, against Defendant Stephens. (Dkt. #77, Exhibit F; Dkt. #113, Exhibit A). This grievance concerns a misconduct ticket that Plaintiff was issued on May 19, 2012. According to Plaintiff, Stephens "completed a misconduct sanction assessment form stating that [Plaintiff's] mental issues will not be effected by any of the available sanctions" applicable to Plaintiff's offense. Plaintiff pursued this grievance through all three steps of the grievance process. The remaining claims in Plaintiff's complaint, however, concern Plaintiff's allegations that he

failed to receive adequate mental health treatment. Accordingly, this grievance does not serve to exhaust any of Plaintiff's remaining claims.

## VI.        ARF-11-06-2396-09c

Plaintiff initiated this grievance on June 23, 2011, alleging that the manner in which his meals were being served was unsanitary. (Dkt. #36, Exhibit C; Dkt. #50, Exhibit A; Dkt. #83, Exhibit D). The remaining claims in Plaintiff's complaint concern his allegations that he failed to receive adequate mental health treatment. Accordingly, this grievance does not serve to exhaust any of Plaintiff's remaining claims.

## VII.       ARF-11-06-2399-09b

Plaintiff initiated this grievance on June 23, 2011, alleging that his meals did not contain sufficient calories. (Dkt. #36, Exhibit D; Dkt. #50, Exhibit A; Dkt. #83, Exhibit E). The remaining claims in Plaintiff's complaint concern his allegations that he failed to receive adequate mental health treatment. Accordingly, this grievance does not serve to exhaust any of Plaintiff's remaining claims.

## VIII.      ARF-11-06-2398-28b

Plaintiff initiated this grievance on June 24, 2011, alleging that he was not receiving appropriate treatment for his Multiple Sclerosis. (Dkt. #36, Exhibit E; Dkt. #50, Exhibit B; Dkt. #83, Exhibit F). The remaining claims in Plaintiff's complaint concern his allegations that he failed to receive adequate mental health treatment. Accordingly, this grievance does not serve to exhaust any of Plaintiff's remaining claims.

IX.          MBP-11-03-0633-15b

Plaintiff initiated this grievance on March 7, 2011, alleging that his mail was not being properly processed.  (Dkt. #36, Exhibit F; Dkt. #62, Exhibit B).  The remaining claims in Plaintiff's complaint concern his allegations that he failed to receive adequate mental health treatment. Accordingly, this grievance does not serve to exhaust any of Plaintiff's remaining claims.

X.          ICF-10-04-1092-26a

Plaintiff initiated this grievance on April 25, 2010, alleging that he had been assaulted by Officer Mawer.  (Dkt. #44, Exhibit A).  The remaining claims in Plaintiff's complaint concern his allegations that he failed to receive adequate mental health treatment.  Accordingly, this grievance does not serve to exhaust any of Plaintiff's remaining claims.

XI.          ICF-10-09-2299-12b1

Plaintiff initiated this grievance on September 16, 2010, against Defendants Davis and Alaya, as well as non-party Dr. Joslin.  (Dkt. #77, Exhibit C).  Plaintiff asserted that he was not being afforded appropriate mental health treatment.  Defendants have submitted evidence that this grievance was not pursued through all three steps of the grievance process.  (Dkt. #36, Exhibit B).  Plaintiff has submitted a copy of a letter that allegedly demonstrates that he pursued this matter through Step III of the grievance process.  (Dkt. #77, Exhibit C at ID#442).  Plaintiff's submission, however, does not advance his cause.  This alleged letter is inadmissible hearsay which the Court cannot consider in the context of a motion for summary judgment.  *See Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008) ("only admissible evidence may be considered by the trial court in ruling on a motion

for summary judgment"). While Plaintiff could have submitted an affidavit or other admissible evidence on the question whether he pursued this matter through Step III, Plaintiff has failed to do so. Accordingly, this grievance fails to exhaust any of Plaintiff's remaining claims.

XII.        MBP-11-03-0691-12b1

Plaintiff submitted this grievance on or about March 15, 2011. (Dkt. #78, Exhibit K at ID#486). Because the parties have not submitted the Step I grievance, it is not clear precisely what issues Plaintiff asserted in this grievance or the individuals against whom such were asserted. Defendants have, however, submitted evidence that Plaintiff did not pursue this grievance through all three steps of the grievance process. (Dkt. #36, Exhibit B). Plaintiff has presented no evidence to the contrary. Accordingly, this grievance fails to exhaust any of Plaintiff's remaining claims.

XIII.       MRF-12-05-0755-27a

Plaintiff initiated this grievance on April 30, 2012, alleging that ARUS Byrd subjected him to improper retaliation. (Dkt. #62, Exhibit C). The remaining claims in Plaintiff's complaint concern his allegations that he failed to receive adequate mental health treatment. Accordingly, this grievance does not serve to exhaust any of Plaintiff's remaining claims.

XIV.       ARF-11-06-2397-19e

Plaintiff initiated this grievance on June 23, 2011, alleging that certain unidentified prison officials improperly processed certain items of his personal property. (Dkt. #113, Exhibit B). The remaining claims in Plaintiff's complaint concern his allegations that he failed to receive adequate

mental health treatment. Accordingly, this grievance does not serve to exhaust any of Plaintiff's remaining claims.

XV.    Unidentified Grievance #1

    Plaintiff has submitted a copy of a Step I grievance form he allegedly completed on May 21, 2010. (Dkt. #66, Exhibit F; Dkt. #77, Exhibit D). In this grievance, Plaintiff alleges that on May 18, 2010, he requested that Defendants Ayala, Gawne, and Davis provide him with appropriate treatment for his various psychiatric issues. According to this grievance, Defendants denied Plaintiff's request.

    The grievance form does not contain a grievance identifier number or any other indication that the grievance was ever submitted. Plaintiff has submitted, however, evidence that he submitted the grievance to prison officials, but that the Grievance Coordinator refused to process such. (Dkt. #67). This evidence creates a genuine issue of material fact as to whether Plaintiff properly exhausted the matters addressed in this grievance. A review of Plaintiff's complaint, however, reveals that he has not asserted a claim concerning events (undertaken by Defendants Ayala, Gawne, and Davis or anyone else) which allegedly occurred on or about May 18, 2010. Instead, with respect to Defendants Ayala, Gawne, and Davis Plaintiff alleges that they refused his request for treatment in March 2010. (Dkt. #1 at ¶ 26). Accordingly, this grievance fails to exhaust any of Plaintiff's remaining claims.

XVI.    Unidentified Grievances #2 and #3

    Plaintiff has submitted a copy of two Step I grievance forms he allegedly completed concerning events which occurred on August 16, 2011. (Dkt. #66, Exhibits A-B; Dkt. #78, Exhibit I).

These grievances were asserted against Defendants Carrie McRoberts,[2] Pirlot, and Dinsa alleging that they refused Plaintiff's requests to obtain appropriate treatment for his various psychiatric issues. These grievance forms do not contain a grievance identifier number or any other indication that they were ever submitted. Plaintiff has presented, however, evidence that he submitted the grievances to prison officials, but that the Grievance Coordinator refused to process such. (Dkt. #67). This evidence creates a genuine issue of material fact as to whether Plaintiff properly exhausted the matters addressed in these grievances.

Defendants assert that even if Plaintiff's Step I grievances were not accepted for filing, Plaintiff was nevertheless obligated to pursue the matter to Steps II and III of the grievance process. According to Defendants, Plaintiff's failure to pursue the matter to conclusion renders his exhaustion attempts insufficient. The Court disagrees.

Defendants are correct that MDOC policy instructs prisoners to proceed to the next step of the grievance process if they do not receive a timely response to a grievance. *See* Michigan Department of Corrections, Policy Directive 03.02.130 ¶¶ T, BB, FF (eff. July 9, 2007). Implicit in this particular instruction, however, is that the grievance in question was accepted and processed according to MDOC policy. *See*, *e.g.*, Michigan Department of Corrections, Policy Directive 03.02.130 ¶ W ("[t]he Grievance Coordinator shall log and assign a unique identifying number to each Step I grievance received, including those which may be rejected"). However, Plaintiff is not alleging that Defendants merely failed to respond to his grievances or even that his grievances were rejected. Instead, Plaintiff

---

[2] The Court recognizes that two defendants in this matter share the last name McRoberts, ARF Deputy Warden Lee McRoberts and ARF Psychiatrist Carrie McRoberts. While neither of these grievances specifically identify the specific Defendant McRoberts against whom the grievances are asserted, given that such are asserted against Plaintiff's care providers concerning his allegations that he has failed to receive adequate mental health treatment, it is clear to the Court that these grievances are asserted against Defendant Carrie McRoberts.

asserts that the Grievance Coordinator refused to accept and process these particular grievances (i.e., failed to log the grievances and assign them unique identifying numbers). The Court does not read the relevant Policy as requiring prisoners to pursue to Steps II and III grievances which were never properly accepted and processed in the first instance. Moreover, Defendants have identified no authority supporting such an interpretation. Accordingly, this argument is rejected.

The Court also notes that Plaintiff's complaint does not contain *specific* allegations concerning any events which allegedly occurred on August 16, 2011. Unlike the circumstance concerning the allegations against Defendants Ayala, Gawne, and Davis, described in the proceeding section, however, the circumstance concerning Plaintiff's claims against Defendants Carrie McRoberts, Pirlot, and Dinsa is distinguishable. In Plaintiff's complaint, the only allegations asserted against Defendants Ayala, Gawne, and Davis were that they denied, in March 2010, his request for treatment. Because the aforementioned grievance (Unidentified Grievance #1) did not concern this specific allegation, such could not serve to exhaust Plaintiff's claims against Defendants Ayala, Gawne, and Davis.

With respect to Plaintiff's claims against Defendants Carrie McRoberts, Pirlot, and Dinsa, however, Plaintiff's complaint does not identify the specific date(s) on which the conduct giving rise to his claims occurred. Instead, Plaintiff merely alleges that Defendants Carrie McRoberts, Pirlot, and Dinsa denied his request for treatment.[3] Because the allegations in the subject grievances do not directly conflict with the allegations in Plaintiff's complaint, the Court cannot conclude that these grievances cannot serve to exhaust the claims in Plaintiff's complaint against Defendants Carrie McRoberts, Pirlot,

---

[3] To the extent that Defendants find fault with Plaintiff's failure to identify the specific date(s) on which the conduct giving rise to his claims occurred, the Court notes that Defendants could have filed a motion for more definite statement pursuant to Federal Rule of Civil Procedure 12(e).

and Dinsa. Accordingly, Defendants Carrie McRoberts, Pirlot, and Dinsa are not entitled to relief with respect to the matters alleged in these particular grievances.

XVII.        Grievances Concerning Events Occurring After the Initiation of This Action

Defendants have also submitted evidence regarding three grievances which Plaintiff pursued through all three steps of the grievance process: (1) ICF-13-04-0809-28c; (2) ICF-13-05-0980-22b; and (3) ICF-13-05-1046-28c. (Dkt. #36, Exhibit B). All three of these grievances, however, were initiated at Step I of the grievance process several months *after* Plaintiff initiated the present action. As previously discussed, such grievances cannot serve to exhaust any of the claims in Plaintiff's complaint.

XVIII.       Exhaustion Summary

In conclusion, for the reasons articulated herein, the undersigned recommends that Plaintiff's remaining claims against Defendants Mutschler, Raymond, Parson, Davis, Eyke, Henry, Lee McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger, Ayala, Gawne, and Palmer be dismissed for failure to exhaust administrative remedies. The undersigned further recommends that Plaintiff's claims against Defendants Carrie McRoberts, Pirlot, and Dinsa be dismissed for failure to exhaust administrative remedies except as to the allegations advanced in the two aforementioned "Unidentified Grievances."

**II.        Unserved Defendant**

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in

Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court - on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." If the plaintiff demonstrates good cause for such failure, however, the court "must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). The Court is raising this issue sua sponte and this Report and Recommendation serves as notice to Plaintiff.

Plaintiff initiated this action on January 11, 2013. On June 27, 2013, the Court dismissed many of Plaintiff's claims, but concluded that Plaintiff's complaint be served on numerous Defendants, including Defendant Unknown Davis. (Dkt. #6-7). On July 10, 2013, a Notice of Lawsuit and Request for Waiver of Service was prepared for Defendant Davis. On July 22, 2013, the Court instructed the MDOC to provide the United States Marshal with Defendant Davis' last known address. The Request for Waiver was returned unexecuted on July 30, 2013. On August 5, 2013, a summons was issued for Defendant Davis. This summons was returned unexecuted on August 13, 2013. In the more than seven months since, Plaintiff has neither requested assistance effecting service on Defendant Davis nor an extension of time to effect service on him. Considering Plaintiff's lack of diligence, the Court recommends that Plaintiff's claims against Defendant Davis be dismissed without prejudice for failure to timely effect service.

## III.        Plaintiff's Motions for Summary Judgment

In his motions for summary judgment, Plaintiff moves the Court to find that "he exhausted his administrative remedies." As articulated above, failure to exhaust administrative remedies is an affirmative defense on which Defendants bear the burden. Plaintiff is not required to demonstrate

that he exhausted his administrative remedies. Thus, Plaintiff's request that the Court assess whether Plaintiff has, in fact, exhausted his administrative remedies, as opposed to whether Defendants have demonstrated a failure by Plaintiff in this regard, is neither appropriate nor properly before the Court. Accordingly, the undersigned recommends that Plaintiff's motions for summary judgment be denied.


## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment, (Dkt. #35), be **granted**; Defendant Gawnee's Motion for Summary Judgment, (Dkt. #43), be **granted**; Defendant Dinsa's Motion for Summary Judgment, (Dkt. #50), be **granted in part and denied in part**; Defendants' Motion for Summary Judgment, (Dkt. #61), be **granted**; Defendant Pirlot's Motion for Summary Judgment, (Dkt. #63), be **granted in part and denied in part**; Defendant Carrie McRoberts' Motion for Summary Judgment, (Dkt. #82), be **granted in part and denied in part**; and Plaintiff's Motions for Summary Judgment, (Dkt. #77 and 97), both be **denied**.

Specifically, the undersigned recommends that Plaintiff's claims against Defendants Mutschler, Raymond, Parson, Eyke, Henry, Lee McRoberts, Klee, Nguyen, Pozios, Beauvau, Romanowski, Fox, Stephens, Myers, Kissinger, Ayala, Gawne, and Palmer be dismissed for failure to exhaust administrative remedies. The undersigned recommends that Plaintiff's claims against Defendants Carrie McRoberts, Pirlot, and Dinsa be dismissed for failure to exhaust administrative remedies except as to the allegations advanced in the two "Unidentified Grievances" discussed herein.

The undersigned further recommends that Plaintiff's claims against Defendant Davis be dismissed without prejudice for failure to timely effect service. Finally, the undersigned recommends

that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date: March 28, 2014                    /s/ Ellen S. Carmody
                                        ELLEN S. CARMODY
                                        United States Magistrate Judge